Oscar M. Orozco-Botello (Bar No. 313104)
oscar.orozco-botello@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Ste. 400, North Tower
Los Angeles, CA 90067
Tel:   (310) 595-3000
Fax:   (310) 595-3300

Tamar Y. Duvdevani (*pro hac vice* pending)
tamar.duvdevani@us.dlapiper.com
Jared Greenfield (*pro hac vice* pending)
jared.greenfield@us.dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Tel:   (212) 335-4500
Fax:   (212) 335-4501

*Attorneys for Plaintiff Nike, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA,
## WESTERN DIVISION

| | |
|---|---|
| NIKE, INC., an Oregon Corporation,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS C. TUINENBURG and DIVIDE THE YOUTH MANUFACTURING, a California Corporation,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**Direct and Contributory Trademark Infringement in Violation of 15 U.S.C. § 1114 (Counts 1, 2, 8);**<br><br>**Direct and Contributory Trademark Counterfeiting in Violation of 15 U.S.C. § 1114 (Counts 3 & 4);**<br><br>**False Designation of Origin / Unfair Competition in Violation of 15 U.S.C. § 1125(a) (Counts 5 & 9);**<br><br>**Common Law Trademark Infringement and Unfair Comp. (Counts 6 & 10);**<br><br>**Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (Counts 7 & 11)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nike, Inc. ("Nike" or "Plaintiff") for its Complaint against Defendants Nicholas C. Tuinenburg ("Tuinenburg") and Divide the Youth Manufacturing ("DTY") (collectively, "Defendants") for trademark infringement, counterfeiting, and related cause of actions, states and alleges as follows:

**PRELIMINARY STATEMENT**

1.      Defendant Nicholas C. Tuinenburg is a social media influencer and content creator known for his collection, sale, promotion, and reviews of counterfeit (which he calls "rep" or "replica") luxury fashion goods, including counterfeit Nike-branded products. Tuinenburg openly and notoriously wields his online influence to promote and peddle counterfeit goods to tens of thousands of social media users across multiple platforms.

2.      Tuinenburg has founded and organized several counterfeit trafficking communities based on Discord[1], where he and his associates operate Discord servers as marketplaces for counterfeit goods and provide advice and step-by-step instructions on how to purchase counterfeit goods from overseas.

3.      Tuinenburg also partners directly with overseas counterfeiters and service providers, such as shipping agent platform PandaBuy, to promote their counterfeit goods and related services.  Tuinenburg advertises on behalf of and promotes these sellers and service providers through his social media accounts, often offering his followers personalized promotional sign-up and discount codes bearing an abbreviation of his first name, "nick."

4.      In collaboration with PandaBuy and his Florida-based associate Eben Fox ("Fox"), Tuinenburg has also launched a website, W2C.net, which contains a curated collection of hundreds of counterfeit Nike-branded goods offered via PandaBuy. Tuinenburg prominently touts his support for and relationship with

---

[1] Discord is an online social platform where users form virtual communities called "servers," in which they communicate by voice, video, and instant messaging.

PandaBuy, going so far as to create and use numerous TikTok and other social media handles that contain "PandaBuy" or some cognizable association therewith, such as the TikTok username "pandabuynick."

5.      Defendant Divide the Youth Manufacturing is Tuinenburg's "streetwear" apparel, accessories, and footwear company, and like Tuinenburg, DTY has a problem respecting Nike's intellectual property rights.  DTY is currently promoting, selling, and distributing knockoffs of Nike's iconic Dunk shoe.

| Genuine Nike Dunks | DTY Knockoffs |
|---|---|
|  |  |

6.      Nike files this lawsuit to protect its intellectual property, rectify the confusion in the marketplace caused by Defendants' misconduct, and combat the scourge of mass counterfeiting carried out and facilitated by Tuinenburg and his ilk.

## THE PARTIES

7.      Nike is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005

8.      On information and belief, Defendant Nicholas C. Tuinenburg, an individual, resides at 1718 Ximeno Avenue, Apt. 4, Long Beach, California 90815, and is a citizen of the State of California.

9.      Defendant Divide the Youth Manufacturing is a corporation organized under the laws of the State of California with a principal place of business at 28881 Green Acres, Mission Viejo, California 92692, and a website located at https://www.dividetheyouth.com/.

10.     On information and belief, Tuinenburg is the founder, sole owner, and operator of DTY and https://www.dividetheyouth.com/.

11.     On information and belief, Tuinenburg created, operates, and controls numerous social media accounts through which Tuinenburg sells and promotes counterfeit Nike-branded goods, and regularly publishes videos and related content about counterfeit shoes and apparel. Specifically, on information and belief, Tuinenburg controls the following social media accounts:

   a. Discord accounts associated with the usernames "nicktuinenburg" and "closetclearout" and the display name "nick";

   b. TikTok accounts associated with the usernames "myfitsaretrash," "myfitsaretrashfr," "myfitsaretrashngl," "dividetheyouth," "pandabuynick," "nickpanda_buy," "nick.pandabuy," "pandabuynick2," "nickpandaguy" "nick," "nicky," and "nick!" ;

   c. YouTube account associated with the usernames "myfitsaretrashy," "myfitsaretrashngl," and display name "myfitsaretrash";

   d. Instagram accounts associated with the usernames "nicktuinenburg," "dividetheyouth," and "nick.pandabuy,";

   e. X account associated with the username "dividetheyouth" and display name "*";

   f. Rumble account associated with the username "myfitsaretrash;" and

   g. Reddit accounts associated with the usernames "yupnick" and "myfitsaretrashngl."

12.     On information and belief, Tuinenburg is the owner and operator of https://myfitsaretrash.net/, and the co-owner and co-operator of https://w2c.net, two websites through which Tuinenburg conducts some of his counterfeiting activities.

13.     On information and belief, Tuinenburg controls the following social media landing pages:

   a. https://linktr.ee/nickpandaguy;

3
COMPLAINT

b. https://campsite.bio/myfitsaretrash; and

c. https://withkoji.com/@myfitsaretrash.

14.     On information and belief, Tuinenburg controls the email addresses myfitsaretrashofficial@gmail.com and dividetheyouth@gmail.com.

15.     On information and belief, Tuinenburg is a partner of and affiliate marketer for several individuals and entities that sell counterfeit Nike-branded shoes and apparel, and/or offer services related to the acquisition of counterfeit Nike-branded goods, including PandaBuy and WeGoBuy.

## JURISDICTION AND VENUE

16.     This action arises under the trademark laws of the United States, 15 U.S.C. § 1051, et seq., and under statutory and common law unfair competition. This Court has subject matter jurisdiction at least under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under federal trademark law. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over Tuinenburg because he resides in this District, and, as alleged herein, Tuinenburg has committed, and continues to commit, acts of trademark infringement and counterfeiting and reap the ill-gotten benefits thereof in this District, through various websites and social media platforms, as well as offices and/or facilities located in this District.

18.     This Court has personal jurisdiction over DTY because it is incorporated, domiciled, does business, and as alleged herein, has committed, and continues to commit, acts of trademark infringement and trade dress infringement in this District, through various websites and social media platforms, as well as offices and/or facilities located in this District.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District, a substantial part of the events giving rise to these

claims arose in this District, and consumer confusion has occurred and is likely to occur in this District.

## FACTUAL BACKGROUND

### Nike's Business and Valuable Trademark Rights

20.     Nike's principal business activity is the design, development, and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories, and services.

21.     As a result of decades of Nike's advertising, promotional, and marketing efforts, Nike has established itself as a multibillion-dollar brand and the world's leading designer, marketer, and distributor of athletic footwear and apparel products which are sold in connection with Nike's famous trademarks.  In addition to spending significant amounts in support of advertising and promotion of its products and services, Nike conducts successful marketing campaigns across various social media platforms, including Facebook, X (formerly known as Twitter), YouTube, Instagram, TikTok, and Snapchat, to further promote Nike's products, services, brands, and trademarks.

22.     Nike and its brands have achieved widespread recognition and fame throughout the United States and the world.  Among the purchasing public, Nike's products and services are instantly recognizable and are seen as high-quality, innovative, and dependable.

23.     Nike is the owner of the right, title, and interest in and to, inter alia, the following trademarks registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Asserted Marks"):

| Reg. No. | Title | Trademark Design | Reg. Date | Classes |
|---|---|---|---|---|
| 1,370,283 | AIR JORDAN | AIR JORDAN (word mark) | 11/12/1985 | 25- Clothing, footwear |
| 3,725,535 | Air Jordan & Wings Design*[2] |  | 12/15/2009 | 25- Clothing, footwear, headgear |
| 3,780,236 | DUNK | DUNK (word mark) | 4/27/2010 | 25- Footwear |
| 3,627,820 | JUMPMAN | JUMPMAN (word mark) | 9/11/2007 | 25- Clothing, footwear, headgear |
| 1,558,100 | JumpMan Design |  | 9/26/1989 | 25- Clothing, Footwear |
| 1,742,019 | JumpMan Design |  | 12/22/1992 | 25- Clothing, footwear, headgear  18- Leather and imitations of leather |
| 978,952 | NIKE | NIKE (word mark) | 2/19/1974 | 25- Clothing, footwear, headgear |
| 1,214,930 | NIKE | NIKE (word mark) | 11/2/1982 | 25- Footwear |
| 1,243,248 | NIKE | NIKE (word mark) | 6/21/1983 | 42- Retail footwear |

---

[2] * Indicates unofficial, descriptive title.

| Reg. No. | Title | Trademark Design | Reg. Date | Classes |
|---|---|---|---|---|
| | | | | and apparel services |
| 6,124,779 | NIKE | NIKE (word mark) | 8/11/2020 | 35- Retail store services and on-line retail store services |
| 1,238,853 | NIKE & Swoosh Design* | *NIKE* | 5/17/1983 | 42- Retail footwear and apparel services |
| 1,325,938 | NIKE & Swoosh Design* | *NIKE* | 3/19/1985 | 25- Footwear |
| 5,286,596 | NIKE AIR VAPORMAX | NIKE AIR VAPORMAX (word mark) | 9/12/2017 | 25- Footwear |
| 977,190 | Swoosh Design | | 1/22/1974 | 25- Footwear |
| 1,264,529 | Swoosh Design | | 1/17/1984 | 42- Retail footwear and apparel services |
| 1,323,343 | Swoosh Design | | 3/5/1985 | 25- Footwear |
| 5,794,674 | Swoosh Design | | 7/2/2019 | 35- Retail store services and on-line retail store services |

24.     The above U.S. registrations for Nike's Asserted Marks are valid, subsisting, unrevoked, uncancelled, and in full force and effect.

25.     Pursuant to 15 U.S.C. § 1065, of Nike's Asserted Marks, the following federally registered Nike trademarks are incontestable and constitute prima facie evidence their validity, Nike's ownership, and Nike's exclusive right to use these marks:

    a.      Reg. No. 1,370,283 (AIR JORDAN word mark)

    b.      Reg. No. 3,725,535 (Air Jordan & Wings Design mark);

    c.      Reg. No. 3,780,236 (DUNK word mark);

    d.      Reg. No. 3,627,820 (JUMPMAN word mark);

    e.      Reg. No. 1,558,100 (JumpMan Design mark);

    f.      Reg. No. 978,952 (NIKE word mark);

    g.      Reg. No. 1,214,930 (NIKE word mark);

    h.      Reg. No. 1,243,248 (NIKE word mark);

    i.      Reg. No. 977,190 (Swoosh Design mark);

    j.      Reg. No. 1,264,529 (Swoosh Design mark);

    k.      Reg. No. 1,323,343 (Swoosh Design mark);

    l.      Reg. No. 1,238,853 (Swoosh Design mark); and

    m.      Reg. No. 1,325,938 (Swoosh Design mark).

26.     Nike also owns extensive common law rights in the Asserted Marks for use in connection with Nike's goods and services.  Nike uses the Asserted Marks on or in connection with many of its products and services.

27.     Nike's Asserted Marks identify, in the United States and throughout

the world, high-quality products and services designed, produced, and offered by Nike.

28.     Nike intends to continue to preserve and maintain its rights in the Asserted Marks.  Nike has continuously used the Asserted Marks in interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Nike goods and services since their respective dates of first use as noted on the federal trademark registration certificates.  Nike has also used the Asserted Marks in connection with virtual products and intends to further expand such use as reflected in its pending trademark applications.

29.     As a result of continuous and long-standing promotion, substantial sales, and consumer recognition, Nike has developed powerful trademarks rights, built substantial goodwill in the Asserted Marks, and has never abandoned that goodwill.  As a result, Nike's Asserted Marks have become distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

30.     Having distinctive trademarks that are readily identifiable is an important factor in creating and maintaining a market for Nike's products, in identifying Nike and its brands, and in distinguishing Nike's products from the products of others.

31.     Nike maintains strict quality control standards for products bearing the Asserted Marks.  Genuine Nike products bearing the Asserted Marks are inspected and approved by Nike prior to distribution and sale.

32.     Nike also maintains strict control over the use of the Asserted Marks in connection with its products so that the company can maintain control over its reputation and goodwill.  Nike, for example, carefully determines how many products bearing the Asserted Marks are released, and when, where, and how those products are sold.

33.     The success of the Nike brand has resulted in significant

counterfeiting of Nike's trademarks. Nike takes counterfeiting seriously and expends significant resources every year to stop the flow of counterfeit Nike-branded goods and the harm it causes to the goodwill of the Nike brand.

### Nike's Dunk Trade Dress

34.     The Nike Dunk sneaker began as a basketball sneaker in the 1980s and grew in popularity as college basketball was reaching new heights among a wide age range of athletes and fans. From east to west, rivalries were strong and network TV brought college hoops, and Nike's Dunk sneakers, to the masses.

35.     The Dunk's adoption and popularity eventually spread beyond basketball culture as the skateboard community organically adopted the Dunk making it a skate icon by the 2000s. From there, the Dunk crossed over sports and fashion, and today it is recognized as one of the most iconic and influential sneakers of all time.

36.     Nike drove the iconic status the Dunk enjoys today, in part, through limited-edition collaborations with designers, artists, and other creatives. For example, in 2005, Nike collaborated with Jeff Staple, Founder and Creative Director of Staple Design and Reed Space, to create the limited-edition Nike SB Dunk Low NYC Pigeon.

37.     Since the launch of the Dunks in 1986, Nike has continuously and substantially exclusively promoted and sold sneakers bearing the Dunk trade dress.

38.     Nike has sold many tens of millions of Dunks in the United States, accounting for hundreds of millions of dollars in revenue.

39.     Nike has also registered the Dunk trade dress on the Principal Register of the U.S. Patent and Trademark Office. Nike owns all right, title, and interest in the U.S. Trademark Registration identified below (the "Dunk Trade Dress"):

| Reg. No. | Trade Dress | Reg. Date | Goods |
|---|---|---|---|
| 3,711,305 |  | 11/17/2009 | Footwear |

40.     Pursuant to 15 U.S.C. § 1065, Nike's U.S. Trademark Registration No. 3,721,054 is incontestable and constitutes conclusive evidence of the validity of the Dunk Trade Dress, Nike's ownership of the Dunk Trade Dress, and Nike's exclusive right to use the Dunk Trade Dress.

41.     Nike maintains strict quality control standards for its products bearing the Dunk Trade Dress. Genuine Nike products bearing the Dunk Trade Dress are inspected and approved by Nike prior to distribution and sale.

42.     Nike also maintains strict control over the use of the Dunk Trade Dress in connection with its products so that Nike can maintain control over its related business reputation and goodwill. Nike, for example, carefully determines how many products bearing the Dunk Trade Dress are released, where the products are released, when the products are released, and how the products are released.

**Tuinenburg's Infringing and Counterfeiting Activities**

43.     On information and belief, Tuinenburg primarily conducts his infringing and counterfeiting activities through various social media accounts and websites he controls.

44.     On information and belief, Tuinenburg also knowingly and materially contributes to and benefits from the infringing and counterfeiting activities of third parties who operate on social media sites Tuinenburg controls and/or on websites Tuinenburg actively promotes in exchange for monetary or other tangible benefits.

1

2

3     **A. <u>Tuinenburg's Sale, Distribution, Promotion, and Facilitation of Third-</u>**
      **<u>Party Sales of Counterfeit Nike-branded Goods via Discord</u>**

4

5         45.     On information and belief, Tuinenburg sells, offers for sale,

6    distributes, promotes, and facilitates third-party sales of counterfeit Nike-branded

7    goods through at least three Discord servers, "MyDiscordIsTrash" (located at

8    https://discord.gg/trash), "Closet Clearout" (located at https://discord.gg/clearout),

9    and "Divide the Youth" (located at https://discord.gg/dty).

10   *MyDiscordIsTrash Discord Server*

11        46.     On information and belief, Tuinenburg is the sole operator of the



12

13

14

15

16

17

18

19

20

21   MyDiscordIsTrash Discord server and has operated it since at least November 9,

22   2020.

23

24

25

26

27

28

12
COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21      47.    The MyDiscordIsTrash Discord server is open and available to anyone
22  with a Discord account.

23      48.    As of December 10, 2023, the MyDiscordIsTrash Discord server has
24  over 57,000 members.

25      49.    The MyDiscordIsTrash Discord server operates, in part, as a
26  community messaging forum, educational resource, advertising platform, and
27  marketplace for the sale and trade of counterfeit goods, including counterfeit
28  Nike-branded shoes and apparel.

50.     The MyDiscordIsTrash Discord server contains several channels related to the sale, distribution, and trade of counterfeit goods, including "Buy/Sell," "Sellers," "Replicas," and "PandaBuy" channels, among others.

51.     The "Buy/Sell" channels include "verified wts" and "wts"[3] channels, where sellers list counterfeit clothing, shoes, and accessories for sale, including counterfeit Nike-branded goods.



52.     As of December 10, 2023, the "verified wts" and "wts" channels on the MyDiscordIsTrash Discord server contain at least two listings of counterfeit Nike-branded shoes for sale.

53.     Tuinenburg and his associates use the "giveaways" channel to conduct promotional giveaways, including of counterfeit Nike-branded goods, to promote Tuinenburg's social media accounts, including his Instagram, TikTok, and YouTube accounts. For example, on May 23, 2023, Tuinenburg conducted a giveaway of counterfeit Supreme x Nike SB Dunk Low "Mean Green" shoes. To

---

[3] On information and belief, the term "wts" means "want to sell" or "willing to sell" or "waiting to sell," and is commonly used on social media and internet forums by parties offering items for sale.

1    be eligible for the giveaway prize, users had to "like" Tuinenburg's then-latest

2    YouTube video.



54.     Tuinenburg and his associates also use the "giveaways" channel to conduct promotional giveaways, including of counterfeit Nike-branded goods, to promote PandaBuy, a platform that provides shipping agents and related services for the purchase and transportation of counterfeit goods to the United States from overseas counterfeit goods sellers and manufacturers. For example, on December 3, 2022, Tuinenburg conducted a giveaway of counterfeit Nike Travis Scott Air Jordan 1 Low shoes.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23    55.    Through the "Sellers" channels, Tuinenburg provides a platform for

24  select counterfeit goods sellers he personally endorses to directly market their

25  counterfeit wares and engage with members of Tuinenburg's MyDiscordIsTrash

26  Discord community.  The "Sellers" channels currently include seventeen

27  dedicated seller channels, at least thirteen of which offer counterfeit Nike-branded

28  goods for sale.  For example, Tuinenburg created a dedicated "Seller" channel for

1 PK Kicks, a known seller of counterfeit Nike-branded shoes.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16




17     56.      Tuinenburg personally introduces some of the counterfeit goods

18 sellers to his Discord community members and, in some instances, provides a

19 custom discount code for consumers to use in connection with purchases on the

20 seller's website. For example, on October 19, 2022, Tuinenburg published the

21 following post under the "musksneaker" seller channel, a channel Tuinenburg

22 created for Musk Sneaker, a known seller of counterfeit Nike-branded goods. At

23 the top of the channel, Tuinenburg shared a personalized discount code ("Nick"),

24 that consumers could use on Musk Sneaker's website, musksneaker.com, to

25 receive a $15.00 discount on their purchase.

26

27

28

57.     The "Panda Buy" channels provide information, resources, and support for users seeking to purchase counterfeit goods through the third-party counterfeit goods shipping agent platform and marketplace, PandaBuy. Under the "pandabuy-sign-up" channel, Tuinenburg published the following post on August 21, 2021, directing users to create a PandaBuy account and providing a personalized "nick" shipping discount code.



58.    Tuinenburg's promotion of PandaBuy extends beyond the dedicated "PandaBuy" channels. For example, within the "Information" channels, Tuinenburg created a "how-to-transfer-items-to-pandabuy" channel and a "free-coupons" channel, which contains the following post by Tuinenburg inviting users to sign up for PandaBuy and use a personalized "nick" shipping discount code.



59.     Under various channels on the MyDiscordIsTrash server, including the "Replicas" and "PandaBuy," channels, Tuinenburg and his associates provide highly detailed instructions and guidance on acquiring counterfeit goods from overseas, including where to find purportedly high-quality counterfeit goods.

### *Closet Clearout Discord Server*

60.     Tuinenburg also created, co-operates, and participates as a seller on another Discord server called "Closet Clearout."

61.     On November 9, 2023, the Closet Clearout Discord server had over 17,000 members.

62.     As of December 11, 2023, the Closet Clearout Discord server had over 22,000 members.

63.     On September 6, 2023, Tuinenburg announced the creation of the Closet Clearout Discord server and explained that the server would replace his previous method of selling counterfeit goods via Instagram, which purportedly resulted in Tuinenburg being repeatedly banned from Instagram.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19     64.     On the Closet Clearout server, Tuinenburg and several other sellers,

20  maintain personal channels through which they offer for sale counterfeit goods,

21  including counterfeit Nike-branded goods. For example, on December 9, 2023,

22  Tuinenburg listed as available for sale five pairs of counterfeit Nike-branded shoes

23  and indicated that he would list more pairs for sale in the coming days.

24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      65.     On the Closet Clearout server, Tuinenburg also conducts giveaways of
17   counterfeit goods, including counterfeit Nike-branded goods. For example, on
18   December 9, 2023, Tuinenburg announced the giveaway of two pairs of
19   counterfeit Nike-branded shoes.
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21  *Divide the Youth Discord Server*

22  66.     Tuinenburg also created and operates another Discord server in

23  connection with his company, Divide the Youth Manufacturing.

24  67.     The Divide the Youth Discord server contains several "WTS"

25  channels related to the sale, distribution, and trade of counterfeit goods, including

26  counterfeit Nike-branded goods. For example, on December 6, 2023, an individual

27  with the username "deficit."[4] published the below post offering several pairs of

28  _____

[4] This username is also associated with the display name "deficit · sugargoo" and

1  counterfeit Nike-branded sneakers for sale.



### B. W2C.net[5]

68.     Tuinenburg also controls and co-operates the website located at www.w2c.net, which features a collection of counterfeit good offerings available through PandaBuy. Tuinenburg and co-owner/co-operator operator Fox are identified under a section titled "Meet the Owners."

---

the user profile identifies the user as a "SugarGoo Promoter and Marketing Manager." Like PandaBuy, SugarGoo is a counterfeit goods and services marketplace platform and services provider.

[5] On information and belief, "W2C" stands for "where to cop," as in where to purchase counterfeit goods.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



69.     The W2C.net website banner identifies it as "The #1 Place For Your Rep Needs," and contains a FAQ section that further identifies the website as a curated catalog of counterfeit goods offered and sold through PandaBuy.

70.     The FAQ section also contains a link to the Closet Clearout Discord server, and refers to it as Tuinenburg and Fox's "second hand rep market."

71.     W2C.net steers visitors to specific PandaBuy listings offered by sellers that Tuinenburg and Fox have allegedly vetted and endorse, including over one hundred listings of Nike-branded counterfeit goods.



72.    In addition to providing direct links to PandaBuy listings, W2C.net also provides a "Quality Check" link for each item which, when clicked, directs users to a part of the PandaBuy website that contains high-resolution photos of samples of the counterfeit item.

73.    For example, W2C.net contains a "Buy on PandaBuy" link and "Quality Check" link for counterfeit Nike Air Force 1 shoes listed for $14.95.[6]



The "Buy on PandaBuy" button, when clicked, directs users to the PandaBuy page for that item.

---

[6] An authentic pair of Nike Air Force 1 '07 shoes currently retails for $115.00 on Nike's website, www.nike.com.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24   The "Quality Check" button, when clicked, directs users to a page on PandaBuy
25   that contains images of a sample of the counterfeit Nike shoe and box.
26
27
28



74.     W2C.net also contains a "How-To" page, which contains step-by-step instructions for how to purchase and transport counterfeit goods to the United States via PandaBuy, as well as a "Sign Up Here" button which, when clicked, directs users to the PandaBuy website.

75.     The "How-To" page also contains an embedded YouTube video published to Fox's YouTube account, titled "How To Buy Items Off Pandabuy! | Best Guide (UPDATED 2023-2024)," which provides additional information and guidance on procuring counterfeit goods from overseas sellers via PandaBuy.

76.     At the bottom of the W2C.net homepage is a "Buy From Us" button which, when clicked, directs visitors to the Closet Clearout Discord server that Tuinenburg created and co-operates with Fox and others.

77.     W2C.net also features a help section that invites visitors to "[j]oin the community for 24/7 support," and includes a "Join the Discord" button that directs

visitors to the PandaBuy Discord server when clicked.



78.     On October 7, 2023, in the "announcements" channel of the MyDiscordIsTrash Discord server, Tuinenburg published a post announcing the launch of W2C.net, which is described as "[a]n ultimate solution to purchasing reps without the headache." Tuinenburg also indicates that he and Fox (identified by his username "Cedaz") built W2C.net and are "officially working alongside Pandabuy."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23          **C. MyFitsAreTrash.net and Landing Pages**

24          79.     On information and belief, Tuinenburg also controls and operates the

25   website located at myfitsaretrash.net, which features links to W2C.net, the

26   PandaBuy website, the MyDiscordIsTrash Discord server, the Closet Clearout

27   Discord server, three counterfeit goods sellers' websites, and several of

28   Tuinenburg's social media accounts.

80.     Myfitsaretrash.net also contains a link to a Google Sheets spreadsheet, identified as "My Spreadsheet! (1500+ finds),"[7] which contains a list of counterfeit goods, including counterfeit Nike-branded goods, available for purchase on PandaBuy, as well as a list of recommended counterfeit goods sellers.

81.     Myfitsaretrash.net also contains an embedded YouTube video titled "How to Buy Reps! – A 6 Minute Easy To Follow Guide," which Tuinenburg created and published to his YouTube account, "myfitsaretrash," on July 8, 2023. As the title suggests, the video is a tutorial for how to purchase and transport to the United States counterfeit goods offered via PandaBuy.

82.     On information and belief, Tuinenburg also controls and operates three social media landing pages: (1) https://linktr.ee/nickpandaguy; (2) https://campsite.bio/myfitsaretrash; and (3) https://withkoji.com/@myfitsaretrash.

83.     Each of these landing pages contain links to the PandaBuy website, the MyDiscordIsTrash Discord server, the PandaBuy Discord server, two counterfeit goods sellers' websites, one or more of Tuinenburg's social media accounts, Tuinenburg's "How to Buy Reps! – A 6 Minute Easy To Follow Guide" YouTube video, and the same Google Sheets spreadsheet featured on myfitsaretrash.net.

### D. Tuinenburg's Promotion and Affiliate Marketing of Counterfeit Goods Websites Offering Counterfeit Nike-Branded Goods for Sale

84.     In addition to "officially working alongside PandaBuy" in connection with W2C.net, on information and belief, Tuinenburg is also an affiliate marketer for and/or partner of PandaBuy and various entities who offer counterfeit Nike-

---

[7] Although Tuinenburg refers to this spreadsheet by various names across his different online platforms, the spreadsheet is titled "Nick's Replica List," and is publicly accessible at https://docs.google.com/spreadsheets/d/1ffvM_fax9iuLEvqgIwprl7SMf2n0B8YaSLKXb843Wo4/edit#gid=0.

branded goods, such as MuskSneaker.

85.     As described above in connection with his activities on Discord, Tuinenburg frequently provides referral discount and sign-up codes for PandaBuy, MuskSneaker, and other counterfeit goods sellers and related services providers. These referral discount codes are often, "nick."

86.     For example, Tuinenburg's Google Sheets spreadsheet accessible on myfitsaretrash.net features a prominent "Sign Up To PandaBuy" advertisement at the top, a custom "nick" 5% shipping discount code, two links to Tuinenburg's "How to Buy Reps! – A 6 Minute Easy To Follow Guide" YouTube video, a QR code that directs to a download page for the PandaBuy app, and hundreds of links to counterfeit products offered on the PandaBuy website, including dozens of counterfeit Nike-branded goods.

87.    In social media posts and videos published to his YouTube and TikTok accounts, Tuinenburg frequently advertises and promotes PandaBuy, including, for example, the "How to Buy Reps! – A 6 Minute Easy To Follow Guide" YouTube video referenced above, which contains, in the video description, a PandaBuy sign-up link.

88.    On information and belief, Tuinenburg has created and used numerous social media handles that contain "PandaBuy" or some cognizable association therewith, such as the TikTok usernames "pandabuynick," "nickpanda_buy," "nick.pandabuy," "pandabuynick2," and "nickpandaguy," and the Instagram username "nick.pandabuy," to further promote PandaBuy.

89.    On information and belief, for every use of his referral discount and/or

sign-up codes on PandaBuy or other counterfeit goods websites, Tuinenburg receives a benefit in the form of site credit, money, and/or free merchandise from the counterfeit sellers and services providers he promotes.

**E. Tuinenburg's Participation in r/rep Subreddit**

90.    Tuinenburg, operating under the Reddit username u/yupnick, is a moderator of the recently launched r/rep subreddit, a Reddit community devoted to counterfeit goods.

91.    On December 11, 2023, Tuinenburg, along with Fox and another seller from the Closet Clearout Discord server known as "gillyreps," made the r/rep subreddit publicly accessible.   Prior to that date, the subreddit displayed a "coming soon" message posted by "gillyreps" and signed "Love from ME, nick & cedaz." On information and belief, "nick" refers to Tuinenburg.



92.    After the r/rep subreddit was made publicly accessible, "gillyreps" posted a welcome video in which the trio announced the launch of the subreddit. In the video, they explain that the new subreddit is intended to be a more "user-friendly" alternative to their respective counterfeit goods-related Discord servers, and a way to centrally and collectively preserve their respective "rep"-related social media content in the face of frequent account bans and terminations on the other social media platforms to which they publish their content. In the subreddit's

description, Tuinenburg and his partners describe the r/rep subreddit as the "[b]est upcoming replica community."

93.    On the same day that r/rep opened to the public, the trio announced a weekly giveaway wherein Reddit users who posted photos and links to counterfeit goods on r/rep would be entered into the giveaway.  According to the post, the first-place prize is "[a]ny pair of DUNK, JORDAN[s]."   The announcement included example photographs of counterfeit Nike Air Jordan 4 shoes.



94.    Tuinenburg's continuation and expansion of his counterfeiting activities through W2C.net, the r/rep subreddit, and other channels, exacerbates the harm Nike has suffered and will continue to suffer as a consequence of Tuinenburg's unauthorized use of Nike's trademarks.

95.    Tuinenburg's acts complained of herein are willful and deliberate.

96.     Tuinenburg's acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless Fox is permanently enjoined from his wrongful acts.

97.     Tuinenburg's acts complained of herein have caused Nike to suffer irreparable injury to its business. Plaintiff will suffer substantial loss of goodwill and reputation unless and until Tuinenburg is permanently enjoined from the wrongful acts complained of herein.

### F. Divide the Youth's Infringement of Nike's Registered Dunk Trade Dress and DUNK Trademark

98.     DTY has attempted to capitalize on the strength and fame of Nike and its Dunk Trade Dress by making, promoting, advertising, marketing, and selling in the United States footwear bearing the Dunk Trade Dress and/or confusingly similar designs (the "Infringing Products").

99.     DTY's Infringing Products include at least products DTY refers to as the "Brown Division Lows" or "Brown Division Dunks," and any other footwear or apparel products that bear the Dunk Trade Dress and/or confusingly similar designs. An example of the Infringing Products is pictured below next to the registered Dunk Trade Dress and a genuine Nike product bearing the Dunk Trade Dress.

| Dunk Trade Dress | Genuine Dunks | Infringing Products |
|---|---|---|
|  |  |  |

100.    DTY also promotes and sells the Infringing Products using the DUNK word mark, including by calling its fakes "DUNKS" in promotional social media posts and using the DUNK word mark in the URL of the DTY webpage from which the Infringing Products are sold, https://shop.dividetheyouth.com/products/brown-division-**dunks** (emphasis added).

101.    On information and belief, DTY promotes and sells Infringing Products on its website at dividetheyouth.com and on a variety of social media accounts, including Instagram and Discord.

102.    On March 4, 2022, Tuinenburg published a post on the Divide the Youth Discord server in which he previewed the Infringing Products and referred to them as "division dunks."



103.    On November 21, 2022, DTY announced on its Instagram and Tuinenburg announced on the Divide the Youth Discord server that the "Division

Lows"/"Division Dunks"[8] Infringing Product would be released on November 25, 2022, Black Friday.







[8] As indicated by the screenshots of the November 21, 2022 Instagram and Discord posts included below, it appears that DTY and/or Tuinenburg at some point after publishing those posts edited the Instagram post to change "DIVISION DUNKS" to "DIVISION LOWS." On information and belief, this revision was intended to conceal DTY's unauthorized use of Nike's DUNK word mark in connection with the advertising and sale of the Infringing Products.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16    104.    On November 23, 2022, DTY announced on its Instagram a giveaway
17    of five pairs of the "Division Lows"/"Division Dunks" Infringing Product to
18    promote its upcoming release. The post prominently features "Division Dunks" in
19    large, stylized text.
20
21
22
23
24
25
26
27
28



105.    DTY's Infringing Products are not genuine Nike products. Nike did not manufacture or inspect the Infringing Products or any component of the Infringing Products, and it did not authorize DTY to make, promote, advertise, market, or sell the Infringing Products.

106.    DTY's Infringing Products travel in the identical channels of trades and are sold to identical consumers as Nike's genuine products.

107.    DTY has taken systematic steps in an attempt to falsely associate its Infringing Products with Nike. DTY has attempted to capitalize on Nike's valuable reputation and customer goodwill by using the Dunk Trade Dress, DUNK word mark, and/or confusingly similar marks in a manner that is likely to cause consumers and potential customers to believe that DTY's Infringing Products are associated with Nike, when they are not.

108.    DTY has intentionally created confusion in the marketplace by, among other things, using Nike's DUNK word mark and the Nike's Dunk Trade Dress to promote and sell Infringing Products. Indeed, there is already confusion in the marketplace regarding whether DTY's Infringing Products are legitimate Nike Dunks or illegal fakes, as evidenced by at least the example consumer commentary below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21   109.   Unless stopped, DTY's Infringing Products and DTY's use of Nike's
22   Dunk Trade Dress and DUNK word mark will continue to cause confusion in the
23   marketplace, including but not limited to initial interest confusion, post-sale
24   confusion, and confusion in the secondary markets.
25   110.   DTY's actions alleged herein are intended to cause confusion, mistake,
26   or deception as to the source of DTY's Infringing Products.
27
28

111.    DTY's actions alleged herein are intended to cause consumers and potential customers to believe that DTY's business and products are associated with Nike, when they are not.

112.    By virtue of the acts complained of herein, DTY has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and DTY's Infringing Products, and has otherwise competed unfairly by unlawfully trading on and using Nike's Dunk Trade Dress and DUNK word mark without Nike's permission.

113.    DTY's acts complained of herein are willful and deliberate.

114.    DTY's acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless DTY is permanently enjoined from his wrongful acts.

115.    DTY's acts complained of herein have caused Nike to suffer irreparable injury to its business. Plaintiff will suffer substantial loss of goodwill and reputation unless and until DTY is permanently enjoined from the wrongful acts complained of herein.

## FIRST CAUSE OF ACTION (TUINENBURG)
### TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114

116.    Nike repeats and realleges each and every allegation in the foregoing Paragraphs 1 to 115 as if fully set forth herein.

117.    Nike's Asserted Marks are on the Principal Register of the United States Patent and Trademark Office.

118.    Through extensive and continuous use, Nike's Asserted Marks and the goodwill of the businesses associated with them in the United States and throughout the world are of significant value, are highly distinctive and arbitrary or fanciful,

and have become universally associated in the public mind with Nike, its products and services, and the very highest quality and reputation.

119.    Tuinenburg has knowingly used and continues to use in commerce, without Nike's permission or authorization, Nike's Asserted Marks, and/or confusingly similar marks, in connection with the sale, distribution, and advertising of counterfeit Nike-branded goods.

120.    Tuinenburg's conduct is intended to exploit the goodwill and reputation associated with Nike's Asserted Marks.

121.    Tuinenburg's use of Nike's Asserted Marks is likely to confuse, mislead, or deceive potential consumers, purchasers, and the general purchasing public as to the source, origin, sponsorship, or affiliation of the counterfeit Nike-branded goods with Nike, and is likely to cause such people to erroneously believe that the counterfeit Nike-branded goods have been authorized, sponsored, approved, endorsed, or licensed by Nike or that Tuinenburg is in some way affiliated with Nike.

122.    Tuinenburg's unauthorized use of Nike's Asserted Marks constitutes trademark infringement of Nike's federally registered trademarks, which has caused damage to Nike and the substantial business and good will embodied in Nike's trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

123.    As a direct and proximate result of Tuinenburg's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and good will that money cannot compensate.  Unless enjoined, Tuinenburg will continue to use Nike's Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike, Nike's Asserted Marks, and to the business and good will represented thereby, for which Nike has no adequate remedy at law.

124.     Nike is further entitled to recover from Tuinenburg the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Tuinenburg's wrongful acts.

125.     Upon information and belief, Tuinenburg has obtained gains, profits, and advantages as a result of his wrongful acts and will continue to do so in an amount yet to be determined.

126.     Tuinenburg's use of Nike's Asserted Marks and/or confusingly similar marks has been intentional and willful.  Tuinenburg's bad faith is evidenced, in part, by his open and notorious trafficking and promotion of counterfeit goods, the egregious and prominent use of Nike's Asserted Marks in connection with the sale and promotion of the counterfeit Nike-branded goods, and the extensive nature of the infringement.  Because of the willful nature of Tuinenburg's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

127.     Because this is an exceptional case, Nike is also entitled to recover its costs of suit and its attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION (TUINENBURG) CONTRIBUTORY TRADEMARK INFRINGEMENT 15 U.S.C. § 1114

128.     Nike repeats and realleges each and every allegation in the foregoing Paragraphs 1 to 127 as if fully set forth herein.

129.     Nike's Asserted Marks are on the Principal Register of the United States Patent and Trademark Office.

130.     Through extensive and continuous use, Nike's Asserted Marks and the goodwill of the businesses associated with them in the United States and throughout the world are of significant value, are highly distinctive and arbitrary or fanciful, and have become universally associated in the public mind with Nike, its products and services, and the very highest quality and reputation.

131.    Through at least Discord, W2C.net, and other social media and websites, Tuinenburg has knowingly provided and continues to provide advertising, marketing, promotional, and marketplace services to third-party sellers of counterfeit Nike-branded goods, with the knowledge, expectation, and/or intention that such third parties are selling or offering for sale counterfeit Nike-branded goods and are using Nike's Asserted Marks without Nike's permission or authorization.

132.    The unauthorized uses of Nike's Asserted Marks by third-party sellers of counterfeit Nike-branded goods aided by Tuinenburg, are likely to confuse, mislead, or deceive potential consumers, purchasers, and the general purchasing public as to the source, origin, sponsorship, or affiliation of the counterfeit Nike-branded goods with Nike, and is likely to cause such people to erroneously believe that the counterfeit Nike-branded goods have been authorized, sponsored, approved, endorsed, or licensed by Nike or that third-party sellers aided by Tuinenburg are in some way affiliated with Nike.

133.    Tuinenburg's knowing and deliberate provision of advertising, marketing, and marketplace services to third-party sellers of counterfeit Nike-branded goods, constitutes contributory trademark infringement of Nike's federally registered trademarks, which has caused damage to Nike and the substantial business and good will embodied in Nike's trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

134.    As a direct and proximate result of Tuinenburg's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and good will that money cannot compensate.  Unless enjoined, Tuinenburg will continue to contribute to third parties' infringing uses of Nike's Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike, Nike's Asserted Marks, and to the business and good will represented thereby, for which Nike has no adequate remedy at law.

135.    Nike is further entitled to recover from Tuinenburg the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Tuinenburg's wrongful acts.

136.    Upon information and belief, Tuinenburg has obtained gains, profits, and advantages as a result of his wrongful acts and will continue to do so in an amount yet to be determined.

137.    Tuinenburg's provision of advertising, marketing, and marketplace services to third-party sellers of counterfeit Nike-branded goods has been intentional and willful.  Tuinenburg's bad faith is evidenced, in part, by his open and notorious trafficking and promotion of counterfeit goods, the egregious and prominent use of Nike's Asserted Marks in connection with the sale and promotion of the counterfeit Nike-branded goods, and the extensive nature of the infringement. Because of the willful nature of Tuinenburg's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

138.    Because this is an exceptional case, Nike is also entitled to recover its costs of suit and its attorneys' fees pursuant to 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION (TUINENBURG)
### TRADEMARK COUNTERFEITING
### 15 U.S.C. § 1114

139.    Nike repeats and realleges each and every allegation in the foregoing Paragraphs 1 to 138 as if fully set forth herein.

140.    Nike's Asserted Marks are on the Principal Register of the United States Patent and Trademark Office.

141.    Through extensive and continuous use, Nike's Asserted Marks and the goodwill of the businesses associated with them in the United States and throughout the world are of significant value, are highly distinctive and arbitrary or fanciful, and have become universally associated in the public mind with Nike, its products and services, and the very highest quality and reputation.

142.     Tuinenburg is acquiring, offering for sale, selling and shipping directly to consumers shoes bearing counterfeits of the following Nike federally registered trademarks: Reg. No. 1,370,283 (AIR JORDAN word mark); Reg. No. 3,725,535 (Air Jordan & Wings Design mark); Reg. No. 3,627,820 (JUMPMAN word mark); Reg. No. 1,558,100 (JumpMan Design mark); Reg. No. 978,952 (NIKE word mark); Reg. No. 1,214,930 (NIKE word mark); Reg. No. 977,190 (Swoosh Design mark); Reg. No. 1,323,343 (Swoosh Design mark); and Reg. No. 1,325,938 (NIKE & Swoosh Design mark).

143.     Tuinenburg's counterfeiting activities are likely to cause and actually are causing confusion, mistake, and deception among the general consuming public as to the quality of Nike's authentic shoes.  Tuinenburg's unlawful acts are intended to reap the benefit of the immense goodwill that Nike has created in its goods and constitute counterfeiting of the following Nike federally registered trademarks in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1): Reg. No. 1,370,283 (AIR JORDAN word mark); Reg. No. 3,725,535 (Air Jordan & Wings Design mark); Reg. No. 3,627,820 (JUMPMAN word mark); Reg. No. 1,558,100 (JumpMan Design mark); Reg. No. 978,952 (NIKE word mark); Reg. No. 1,214,930 (NIKE word mark); Reg. No. 977,190 (Swoosh Design mark); Reg. No. 1,323,343 (Swoosh Design mark); and Reg. No. 1,325,938 (NIKE & Swoosh Design mark).

144.     Unless enjoined, Tuinenburg will continue to deceive the public with his counterfeiting conduct and Nike will continue to suffer immediate and irreparable injury, for which Nike has no adequate remedy at law.

145.     Because Tuinenburg's conduct is willful, Nike is entitled to statutory damages of up to $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117.

146.     Because this is an exceptional case, Nike is also entitled to recover its costs of suit and its attorneys' fees pursuant to 15 U.S.C. § 1117.

**FOURTH CAUSE OF ACTION (TUINENBURG)**
**CONTRIBUTORY TRADEMARK COUNTERFEITING**
**15 U.S.C. § 1114**

147.    Nike repeats and realleges each and every allegation in the foregoing Paragraphs 1 to 146 as if fully set forth herein.

148.    Nike's Asserted Marks are on the Principal Register of the United States Patent and Trademark Office.

149.    Through extensive and continuous use, Nike's Asserted Marks and the goodwill of the businesses associated with them in the United States and throughout the world are of significant value, are highly distinctive and arbitrary or fanciful, and have become universally associated in the public mind with Nike, its products and services, and the very highest quality and reputation.

150.    Tuinenburg is knowingly and intentionally facilitating and materially supplying, *inter alia*, advertising, marketing, and marketplace services, of which he has direct control and monitoring ability, to directly-infringing third parties that use Tuinenburg's services to offer for sale, sell and ship directly to consumers shoes bearing counterfeits of the following Nike federally registered trademarks: Reg. No. 1,370,283 (AIR JORDAN word mark); Reg. No. 3,725,535 (Air Jordan & Wings Design mark); Reg. No. 3,627,820 (JUMPMAN word mark); Reg. No. 1,558,100 (JumpMan Design mark); Reg. No. 978,952 (NIKE word mark); Reg. No. 1,214,930 (NIKE word mark); Reg. No. 977,190 (Swoosh Design mark); Reg. No. 1,323,343 (Swoosh Design mark); and Reg. No. 1,325,938 (NIKE & Swoosh Design mark). In the provision of such services, Tuinenburg knowingly and intentionally induces third parties to directly infringe Nike's Asserted Marks.

151.    Tuinenburg's counterfeiting activities are likely to cause and actually are causing confusion, mistake, and deception among the general consuming public as to the quality of Nike's authentic shoes. Tuinenburg's unlawful acts are intended to reap the benefit of the immense goodwill that Nike has created in its goods and

constitute counterfeiting of the following Nike federally registered trademarks in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1): Reg. No. 1,370,283 (AIR JORDAN word mark); Reg. No. 3,725,535 (Air Jordan & Wings Design mark); Reg. No. 3,627,820 (JUMPMAN word mark); Reg. No. 1,558,100 (JumpMan Design mark); Reg. No. 978,952 (NIKE word mark); Reg. No. 1,214,930 (NIKE word mark); Reg. No. 977,190 (Swoosh Design mark); Reg. No. 1,323,343 (Swoosh Design mark); and Reg. No. 1,325,938 (NIKE & Swoosh Design mark).

152.    Unless enjoined, Tuinenburg will continue to supply material services to sellers of counterfeit Nike-branded goods that deceive the public and directly infringe on Nike's Asserted Marks, and Nike will continue to suffer immediate and irreparable harm, for which Nike has no adequate remedy at law.

153.    Because Tuinenburg's conduct is willful, Nike is entitled to statutory damages of up to $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117.

154.    Because this is an exceptional case, Nike is also entitled to recover its costs of suit and its attorneys' fees pursuant to 15 U.S.C. § 1117.

## FIFTH CAUSE OF ACTION (TUINENBURG)
## FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION
## 15 U.S.C. § 1125(a)

155.    Nike repeats and realleges each and every allegation in the foregoing Paragraphs 1 to 154 as if fully set forth herein.

156.    Tuinenburg's unauthorized use of Nike's Asserted Marks and/or confusingly similar marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the counterfeit Nike-branded goods by creating the false and/or misleading impression the counterfeit Nike-branded goods are produced by, authorized by, or otherwise associated with Nike.

157.    As a direct and proximate result of Tuinenburg's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and good will that money cannot compensate.  Unless enjoined, Tuinenburg will continue to use Nike's Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike, Nike's Asserted Marks, and to the business and good will represented thereby, for which Nike has no adequate remedy at law.

158.    Nike is further entitled to recover from Tuinenburg the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Tuinenburg's wrongful acts.

159.    Tuinenburg's use of Nike's Asserted Marks and/or confusingly similar marks has been intentional and willful.  Tuinenburg's bad faith is evidenced, in part, by his open and notorious trafficking and promotion of counterfeit goods, the egregious and prominent use of Nike's Asserted Marks in connection with the sale and promotion of the counterfeit Nike-branded goods, and the extensive nature of the infringement.  Because of the willful nature of Tuinenburg's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

160.    Because this is an exceptional case, Nike is also entitled to recover its costs of suit and its attorneys' fees pursuant to 15 U.S.C. § 1117.

**SIXTH CAUSE OF ACTION (TUINENBURG)**
**COMMON LAW TRADEMARK INFRINGEMENT**
**AND UNFAIR COMPETITION**

161.    Nike repeats and realleges each and every allegation in the foregoing Paragraphs 1 to 160 as if fully set forth herein.

162.    Through its prior and continuous use of its Asserted Marks in commerce, Nike's Asserted Marks have become widely known, and Nike has been

identified in the public mind as the manufacturer of the products to which the Nike Asserted Marks are applied.

163.    Through its prior and continuous use of its Asserted Marks in commerce, Nike enjoys exclusive common law rights in the Asserted Marks.

164.    Tuinenburg's use of Nike's Asserted Marks is without any permission, license or other authorization from Nike.

165.    Tuinenburg, with knowledge and intentional disregard of Nike's rights, continues to advertise, promote, and sell counterfeit goods using Nike's Asserted Marks and/or confusingly similar marks. Tuinenburg's acts have caused, continue to cause, and/or are likely to cause confusion as to the source and/or sponsorship of the counterfeit Nike-branded goods.

166.    Tuinenburg's acts as alleged herein constitute common law trademark infringement, and have already caused Nike irreparable damage and will, unless enjoined, continue to so damage Nike, which has no adequate remedy at law.

167.    Upon information and belief, Tuinenburg committed the acts alleged herein knowingly, willfully, wantonly, oppressively, fraudulently, maliciously, and in conscious disregard of Nike's rights, thereby entitling Nike to exemplary and punitive damages pursuant to the common law of the State of California in an amount sufficient to punish, deter, and make an example of Tuinenburg.

**SEVENTH CAUSE OF ACTION (TUINENBURG)**
**UNFAIR COMPETITION IN VIOLATION OF**
**CAL. BUS. & PROF. CODE §§ 17200, et seq.**

168.    Nike repeats and realleges each and every allegation in the foregoing Paragraphs 1 to 167 as if fully set forth herein.

169.    By reason of the foregoing, Tuinenburg has been, and is, engaged in unlawful, unfair and/or fraudulent business practices in violation of §§ 17200, et seq., of the California Bus. & Prof. Code.

170.    As a direct and proximate result of Tuinenburg's counterfeiting activities and unauthorized use of the Asserted Marks and/or confusingly similar marks Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, Tuinenburg will continue to deceive the public with his counterfeiting conduct and unauthorized use of the Asserted Marks and/or confusingly similar marks, and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to: (a) an injunction restraining Tuinenburg and, as applicable, his agents, servants, and employees, and all persons acting in concert with him, from counterfeiting and using the Asserted Marks and/or confusingly similar marks; and (b) restitution of Tuinenburg's profits earned from his counterfeiting and unauthorized use of the Asserted Marks and/or confusingly similar marks in which profits Nike has a vested interest.

## EIGHTH CAUSE OF ACTION (DTY)
### TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114

171.    Nike repeats and realleges each and every allegation in the foregoing Paragraphs 1 to 170 as if fully set forth herein.

172.    Nike's Dunk Trade Dress and DUNK word mark are on the Principal Register of the United States Patent and Trademark Office.

173.    Through extensive and continuous use, Nike's Dunk Trade Dress and DUNK word mark, and the goodwill of the businesses associated with them in the United States and throughout the world are of significant value, are highly distinctive and arbitrary or fanciful, and have become universally associated in the public mind with Nike, its products and services, and the very highest quality and reputation.

174.    DTY has knowingly used and continues to use in commerce, without Nike's permission or authorization, Nike's Dunk Trade Dress and DUNK word

mark, and/or confusingly similar marks, in connection with the sale, distribution, and advertising of products DTY manufactures, advertises, promotes, and sells in the United States, including the Infringing Products.

175.    DTY's conduct is intended to call to mind and create a likelihood of confusion with regard to, and exploit the goodwill and reputation associated with, Nike's Dunk Trade Dress and DUNK word mark.

176.    DTY's use of Nike's Dunk Trade Dress and DUNK word mark is likely to confuse, mislead, or deceive potential consumers, purchasers, and the general purchasing public as to the source, origin, sponsorship, or affiliation of DTY or DTY's Infringing Products, and is likely to cause such people to erroneously believe that DTY's Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by Nike or that DTY  is in some way affiliated with Nike.

177.    DTY's unauthorized use of Nike's Dunk Trade Dress and DUNK word mark constitutes trademark infringement of Nike's federally registered trademarks, which has caused damage to Nike and the substantial business and good will embodied in Nike's trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

178.    As a direct and proximate result of DTY's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and good will that money cannot compensate.  Unless enjoined, DTY will continue to use Nike's Dunk Trade Dress, DUNK word mark, and/or confusingly similar marks and will cause irreparable damage to Nike, Nike's Dunk Trade Dress, Nike's DUNK word mark, and to the business and good will represented thereby, for which Nike has no adequate remedy at law.

179.    Nike is further entitled to recover from DTY the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of DTY's wrongful acts.

180.     Upon information and belief, DTY has obtained gains, profits, and advantages as a result of its wrongful acts and will continue to do so in an amount yet to be determined.

181.     DTY's use of Nike's Dunk Trade Dress, Nike's DUNK word mark, and/or confusingly similar marks has been intentional and willful.  DTY's bad faith is evidenced at least by the similarity of DTY's Infringing Products to Nike's Dunk Trade Dress and DTY's revision of its social media posts advertising the Infringing Products to change the infringing "Division Dunks" to "Division Lows."  Because of the willful nature of DTY's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

182.     Because this is an exceptional case, Nike is also entitled to recover its costs of suit and its attorneys' fees pursuant to 15 U.S.C. § 1117.

## NINTH CAUSE OF ACTION (DTY)
## FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION
## 15 U.S.C. § 1125(a)

183.     Nike repeats and realleges each and every allegation in the foregoing Paragraphs 1 to 182 as if fully set forth herein.

184.     DTY's unauthorized use of Nike's Dunk Trade Dress, DUNK word mark, and/or confusingly similar marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of DTY and/or DTY's Infringing Products by creating the false and/or misleading impression DTY's Infringing Products are produced by, authorized by, or otherwise associated with Nike.

185.     As a direct and proximate result of DTY's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and good will that money cannot compensate.  Unless enjoined, DTY will continue to use Nike's Dunk Trade Dress, DUNK word mark, and/or confusingly similar marks and will cause irreparable damage to Nike, Nike's Dunk

Trade Dress, DUNK word mark, and to the business and good will represented thereby, for which Nike has no adequate remedy at law.

186. Nike is further entitled to recover from DTY the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of DTY's wrongful acts.

187. DTY's use of Nike's Dunk Trade Dress, DUNK word mark, and/or confusingly similar marks has been intentional and willful. DTY's bad faith is evidenced at least by the similarity of DTY's Infringing Products to Nike's Dunk Trade Dress and DTY's revision of its social media posts advertising the Infringing Products to change the infringing "Division Dunks" to "Division Lows." Because of the willful nature of DTY's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

188. Because this is an exceptional case, Nike is also entitled to recover its costs of suit and its attorneys' fees pursuant to 15 U.S.C. § 1117.

**TENTH CAUSE OF ACTION (DTY)**
**COMMON LAW TRADEMARK INFRINGEMENT**
**AND UNFAIR COMPETITION**

189. Nike repeats and realleges each and every allegation in the foregoing Paragraphs 1 to 189 as if fully set forth herein.

190. Through its prior and continuous use of the Dunk Trade Dress and DUNK word mark in commerce, Nike's Dunk Trade Dress and DUNK word mark have become widely known, and Nike has been identified in the public mind as the manufacturer of the products bearing the Dunk Trade Dress and DUNK word mark.

191. Through its prior and continuous use of its Dunk Trade Dress and DUNK word mark in commerce, Nike enjoys exclusive common law rights in the Dunk Trade Dress and DUNK word mark.

192. DTY's use of Nike's Dunk Trade Dress and DUNK word mark is without any permission, license or other authorization from Nike.

193.    DTY, with knowledge and intentional disregard of Nike's rights, continues to advertise, promote, and sell products using Nike's Dunk Trade Dress, DUNK word mark, and/or confusingly similar marks. DTY's acts have caused, continue to cause, and/or are likely to cause confusion as to the source and/or sponsorship of DTY or DTY's Infringing Products.

194.    DTY's acts as alleged herein constitute common law trademark infringement, and have already caused Nike irreparable damage and will, unless enjoined, continue to so damage Nike, which has no adequate remedy at law.

195.    Upon information and belief, DTY committed the acts alleged herein knowingly, willfully, wantonly, oppressively, fraudulently, maliciously, and in conscious disregard of Nike's rights, thereby entitling Nike to exemplary and punitive damages pursuant to the common law of the State of California in an amount sufficient to punish, deter, and make an example of DTY.

## ELEVENTH CAUSE OF ACTION (DTY)
### UNFAIR COMPETITION IN VIOLATION OF
### CAL. BUS. & PROF. CODE §§ 17200, et seq.

196.    Nike repeats and realleges each and every allegation in the foregoing Paragraphs 1 to 195 as if fully set forth herein.

197.    By reason of the foregoing, DTY has been, and is, engaged in unlawful, unfair and/or fraudulent business practices in violation of §§ 17200, et seq., of the California Bus. & Prof. Code.

198.    As a direct and proximate result of DTY's unauthorized use of Nike's Dunk Trade Dress, DUNK word mark, and/or confusingly similar marks, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, DTY will continue its unauthorized use of Nike's Dunk Trade Dress, DUNK word mark, and/or confusingly similar marks, and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to: (a) an

injunction restraining DTY and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with DTY, from using Nike's Dunk Trade Dress, DUNK word mark, and/or confusingly similar marks; and (b) restitution of DTY's profits earned from its unauthorized use of Nike's Dunk Trade Dress, DUNK word mark, and/or confusingly similar marks in which profits Nike has a vested interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Nike respectfully prays for:

1.   A judgment and order that:

    a.   Tuinenburg has willfully (A) infringed Nike's Asserted Marks and engaged in counterfeiting in violation of 15 U.S.C. §1114; (B) used false designations of origin and made false and/or misleading statements in violation of 15 U.S.C § 1125(a); (C) violated Nike's common law rights in Nike's Asserted Marks; (D) violated Nike's common law rights in the Asserted Marks; and (E) engaged in unlawful, unfair, or fraudulent business practices in violation of §§ 17200, et seq. of the California Bus. & Prof. Code; and

    b.   DTY has willfully (A) infringed Nike's Dunk Trade Dress and DUNK word mark, and in violation of 15 U.S.C. §1114; (B) used false designations of origin and made false and/or misleading statements in violation of 15 U.S.C § 1125(a); (C) violated Nike's common law rights in Nike's Dunk Trade Dress and DUNK word mark; (D) violated Nike's common law rights in the Dunk Trade Dress and DUNK word mark; and (E) engaged in unlawful, unfair, or fraudulent business practices in violation of §§ 17200, et seq. of the California Bus. & Prof. Code.

2.     A judgment and order enjoining Defendants and Defendants' affiliates, agents, employees, attorneys, and all other persons acting in concert with Defendants, during the pendency of this action and permanently thereafter from:

  a. Manufacturing, minting, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to shoes and apparel goods) under and/or bearing Nike's Asserted Marks, Nikes' Dunk Trade Dress, any marks substantially indistinguishable therefrom, or any other marks, names, symbols, or logos which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any products that Defendants caused to enter the stream of commerce or any of Defendants' commercial activities are sponsored or licensed by Nike, are authorized by Nike, or are connected or affiliated in some way with Nike or Nike's Asserted Marks and the Dunk Trade Dress;

  b. Manufacturing, minting, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to shoes and apparel goods) under and/or bearing Nike's Asserted Marks, the Dunk Trade Dress, any marks substantially indistinguishable therefrom, and/or confusingly similar marks;

  c. Implying Nike's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendants' products, services, or commercial activities, passing off Defendants' businesses as that of Nike, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Nike and from otherwise interfering with or injuring Nike's Asserted Marks, Dunk Trade Dress, or the good will associated therewith;

d. Representing or implying that Defendants are in any way sponsored by, currently affiliated with, or licensed by Nike;

e. Engaging in the sale of counterfeit Nike goods; or

f. Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (e) above;

3. An order that Nike is the exclusive owner of the Asserted Marks and Dunk Trade Dress, and that such marks are valid and protectable;

4. An order that Defendants be required to deliver to Nike for destruction any and all counterfeit Nike-branded goods and Infringing Products, digital files, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of their possession, custody, or control bearing Nike's Asserted Marks, Dunk Trade Dress, any marks substantially indistinguishable therefrom, and/or confusingly similar marks;

5. An order granting an award of damages suffered by Nike according to proof at the time of trial;

6. An order that Defendants account to Nike for any and all profits earned as a result of Defendants' acts in violation of Nike's rights;

7. An award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117(a);

8. An award of three times such profits or damages, whichever amount is greater, together with a reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(b);

9. An award of statutory damages pursuant to 15 U.S.C. § 1117(c);

10. An order granting an award of punitive damages for the willful and wanton nature of Defendants' aforesaid acts under the common law;

11. An order granting pre-judgment interest on any recovery by Nike;

12. An order granting an award of Nike's costs, expenses, and reasonable attorneys' fees; and

13.     Granting such other and further relief as is just and proper.

COMPLAINT

Dated:      December 14, 2023            Respectfully submitted,

By: _/s/ Oscar M. Orozco-Botello_

   Oscar M. Orozco-Botello
   (Bar No. 313104)
   **DLA PIPER LLP (US)**
   2000 Avenue of the Stars
   Ste. 400, North Tower
   Los Angeles, CA 90067
   Tel:      (310) 595-3000
   Fax:      (310) 595-3300

   Tamar Y. Duvdevani
   (*pro hac vice* pending)
   Jared Greenfield
   (*pro hac vice* pending)
   **DLA PIPER LLP (US)**
   1251 Avenue of the Americas,
   27th Floor
   New York, NY 10020
   Tel:      (212) 335-4500
   Fax:      (212) 335-4501

   *Attorneys for Plaintiff Nike, Inc.*

## **DEMAND FOR JURY TRIAL**

Nike, Inc. hereby demands a trial by jury on all claims and issues in this action so triable.

Dated:      December 14, 2023          Respectfully submitted,

By: _/s/ Oscar M. Orozco-Botello_

Oscar M. Orozco-Botello
(Bar No. 313104)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Ste. 400, North Tower
Los Angeles, CA 90067
Tel:      (310) 595-3000
Fax:      (310) 595-3300

Tamar Y. Duvdevani
(_pro hac vice_ pending)
Jared Greenfield
(_pro hac vice_ pending)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas,
27th Floor
New York, NY 10020
Tel:      (212) 335-4500
Fax:      (212) 335-4501

_Attorneys for Plaintiff Nike, Inc._