**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| NIKE, INC., an Oregon corporation,<br>Plaintiff,<br>v.<br>NICHOLAS C. TUINENBURG and DIVIDE THE YOUTH MANUFACTURING, a California corporation,<br>Defendants. | Case No. 2:23-CV-10495-AB-ASx<br><br>**[~~PROPOSED~~] ORDER GRANTING PLAINTIFF NIKE, INC.'S MOTION FOR A PERMANENT INJUNCTION AND PARTIES' PROPOSED INJUNCTION TERMS (DKT. NO. 113)**<br><br>Trial Date: March 16, 2026<br>FPTC Date: February 20, 2026 |

Currently before the Court is Plaintiff Nike, Inc.'s ("Nike" or "Plaintiff") Motion for Permanent Injunction ("Motion") (Dkt. No. 113). This Court, having considered Nike's Motion, all papers in support and opposition, the parties' arguments at the July 24, 2026 hearing, and good cause appearing therefor, hereby **GRANTS** the Motion and issues the permanent injunction attached hereto as Exhibit 1 ("Permanent Injunction"). The Permanent Injunction is effective immediately.

**IT IS SO ORDERED.**

Dated: September 2, 2026

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

# PERMANENT INJUNCTION

1. Defendant Nicholas C. Tuinenburg ("Tuinenburg"), Defendant Divide the Youth Manufacturing ("DTY" and collectively with Tuinenburg, "Defendants"), and all Defendants' affiliates, subsidiaries, successors, assigns, agents, employees, officers, directors, attorneys, and all other persons or entities acting in concert or participation with any of them who receive actual notice of this Permanent Injunction, are hereby permanently enjoined and restrained from, directly or indirectly:

a. Manufacturing, producing, minting, assembling, transporting, promoting, advertising, marketing, publicizing, sourcing, distributing, licensing, offering for sale, importing, exporting, selling, displaying, or otherwise dealing in any unauthorized, infringing, and/or counterfeit products or services (including but not limited to footwear, apparel, and accessories) that bear, display, or incorporate the Nike Marks,[1] the Nike Dunk Trade Dress,[2] any other registered or unregistered Nike trademarks or trade dress, any colorable imitation thereof, any marks or trade dress confusingly similar to or substantially indistinguishable therefrom, or any other marks, names, symbols, logos, designations, graphics, designs, or trade dress that are likely to cause confusion, to cause mistake, or to deceive any person into the belief that Defendants' products, services, or commercial activities are sponsored by, licensed by, authorized by, or affiliated or connected with Nike or its trademarks and trade dress;

---

[1] Inclusive of the following Nike trademarks at issue in this action: AIR JORDAN word mark (U.S. Reg. No. 1,370,283); Air Jordan & Wings Design mark (U.S. Reg. No. 3,725,535); DUNK word mark (U.S. Reg. No. 3,780,236); JumpMan Design mark (U.S. Reg. Nos. 1,558,100 and 1,742,019); NIKE mark (U.S. Reg. Nos. 978,952 and 1,214,930); NIKE & Swoosh Design mark (U.S. Reg. No. 1,325,938); and SWOOSH Design mark (U.S. Reg. Nos. 977,190 and 1,323,343).

[2] Reg. No. 3,711,305.

b. Knowingly, or with willful blindness, participating in, facilitating, or arranging the manufacture, production, minting, assembly, transport, promotion, advertising, marketing, publicizing, sourcing, distribution, licensing, offer for sale, import, export, sale, display, or other dealing in any unauthorized, infringing, and/or counterfeit products or services (including but not limited to footwear, apparel, and accessories) that bear, display, or incorporate the Nike Marks, the Nike Dunk Trade Dress, any other registered or unregistered Nike trademarks or trade dress, any colorable imitation thereof, any marks or trade dress confusingly similar to or substantially indistinguishable therefrom, or any other marks, names, symbols, logos, designations, graphics, designs, or trade dress that are likely to cause confusion, to cause mistake, or to deceive any person into the belief that Defendants' products, services, or commercial activities are sponsored by, licensed by, authorized by, or affiliated or connected with Nike or its trademarks and trade dress;

c. Knowingly, or with willful blindness, promoting, advertising, marketing, publicizing, endorsing, or referring consumers or followers to any manufacturer, seller, distributor, agent (including but not limited to MuleBuy, AllChinaBuy, PandaBuy, WeGoBuy, SugarGoo), freight forwarder, transportation service, e-commerce platform, or any other person or entity that is engaged in or substantially involved in the manufacture, production, minting, assembly, transport, promotion, advertising, marketing, publicizing, sourcing, distribution, licensing, offer for sale, import, export, sale, or display of any Nike-branded counterfeit or infringing Nike-branded good;

d. Knowingly, or with willful blindness, using or permitting, licensing, or authorizing any other person or entity's use of Tuinenburg's name, image, likeness, voice, social media accounts, brand names (including but not limited to "Divide the Youth" and "DTY"), or any other indicia of identity to promote, advertise, market, publicize, or endorse the products, services, or business of any

person or entity that is engaged in or substantially involved in the manufacture, production, minting, assembly, transport, promotion, advertising, marketing, publicizing, sourcing, distribution, licensing, offer for sale, import, export, sale, or display of any Nike-branded counterfeit or infringing Nike-branded good;

e. Implying or suggesting, whether expressly or by implication, Nike's approval, endorsement, sponsorship of, or affiliation, association, or connection with Defendants' products, services, commercial activities, or any entity with which Defendants are affiliated; passing off Defendants' goods or services as those of Nike; or engaging in any act or series of acts that, alone or in combination, constitutes unfair competition with Nike, dilutes Nike's trademarks and trade dress, or otherwise interferes with or injures Nike's trademarks and trade dress or the goodwill associated therewith;

f. Engaging in any act that is likely to dilute the distinctive quality of any Nike trademark or trade dress, tarnish or blur any Nike trademark or trade dress, interfere with Nike's intellectual property rights;

g. Knowingly, or with willful blindness, assisting, inducing, aiding, abetting, contributing to, or conspiring with any other person, entity, or platform in engaging in or performing any of the activities referred to in paragraphs (a) through (f) above with respect to counterfeit or infringing Nike-branded goods.

2. Defendants shall, within sixty (60) calendar days of entry of this Permanent Injunction, surrender to Nike or its designated agent for impoundment and destruction all products, inventory, packaging, labels, promotional materials, molds, plates, and other instrumentalities in Defendants' possession, custody, or control that bear, display, or incorporate the Nike Marks or the Nike Dunk Trade Dress, or any colorable imitation thereof, and that constitute counterfeit or infringing Nike-branded goods or materials specifically used to manufacture or create such counterfeit or infringing Nike-branded goods.

3. Defendants shall, within forty-five (45) calendar days of entry of this Permanent Injunction, remove any Content from all domain names and website URLs owned, operated, or controlled by Defendants that promotes, advertises, sells, distributes, or refers consumers to counterfeit or infringing Nike-branded goods.

4. Defendants shall, within forty-five (45) calendar days of entry of this Permanent Injunction, permanently abandon and delete the ClosetClearout, MyDiscordIsTrash, and DivideTheYouth Discord servers and never reactivate, reregister or otherwise control these accounts. Defendants shall further remove from @nicktuinenburg (Instagram), @nicktuinenburg (TikTok), @myfitsaretrashy (YouTube), and any other social media accounts owned, operated, or controlled by Defendants all content that promotes, advertises, offers for sale, sells, distributes, or refers consumers to counterfeit or infringing Nike-branded goods or any colorable imitation thereof.

5. Defendants shall not create, operate, or maintain, or direct any third party to create, operate, or maintain, any new website, social media account, or online presence for the purpose of knowingly, or with willful blindness, engaging in any of the activities prohibited by this Order.

6. Defendants shall, within sixty (60) calendar days of entry of this Permanent Injunction and every one hundred eighty (180) days thereafter for a period of three (3) years, serve upon Nike a written compliance report, under penalty of perjury, that they are in compliance with this Order.

7. The Court shall retain jurisdiction to enforce the terms of this Permanent Injunction and to impose such relief as may be authorized by applicable law including but not limited to civil and criminal contempt proceedings, monetary penalties, and such other relief the Court deems just and appropriate.

8. Notwithstanding any other provision of this Permanent Injunction, where Nike seeks to enforce this Permanent Injunction based on Defendants' alleged contributory infringement, contributory counterfeiting, or other secondary liability

arising from the direct infringing or counterfeiting activity of a third party, Nike shall provide Defendants with written notice and an opportunity to cure as provided herein prior to seeking enforcement. Such notice shall: (i) identify with reasonable specificity the third party whose conduct forms the basis of the alleged contributory violation; (ii) describe the third party's allegedly infringing or counterfeiting activity; and (iii) state the basis on which Nike contends Defendants are contributorily liable for such third-party conduct. Such notice may be delivered by any commercially reasonable means, including email, overnight courier, or certified mail, to Defendants or Defendants' counsel of record. Upon receipt of such notice, Defendants shall have twenty-one (21) calendar days to cure the contributory violation by ceasing all conduct that contributes to, facilitates, or supports the identified third party's infringing or counterfeiting activity. If Defendants fail to cure the contributory violation within such twenty-one (21) day period, Nike shall be entitled to seek any and all remedies available under this Permanent Injunction or applicable law. If Defendants timely cure the identified contributory violation, Nike shall not seek enforcement of this Permanent Injunction based on the conduct identified in the notice.

9. This Permanent Injunction shall be binding throughout the United States and its territories, and shall apply to conduct occurring in or directed toward the United States regardless of the geographic location from which such conduct originates, to the extent such conduct is subject to the prohibitions set forth in this Permanent Injunction.

10. This Permanent Injunction shall remain in effect in perpetuity unless modified or dissolved by further order of this Court.

Dated: September 2, 2026

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT JUDGE